UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cr-10015 |
| ) | |
| SHAWN J. CREW, ) | |
| ) | |
| Defendant. ) | |

# ORDER & OPINION

This matter is before the Court on Defendant Shawn Crew's *pro se* request for compassionate release (dkt. 344) and counseled Amended Motion for Compassionate Release (dkt. 347). The Government has responded (dkt. 355) and Probation has filed a recommendation (dkt. 346) at the Court's direction. This matter is ripe for review. For the following reasons, the Motion is denied.

### BACKGROUND

In April 2012, Defendant pled guilty to conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). (Dkt. 50). Defendant faced a statutory mandatory term of life imprisonment for the offense due to his criminal history. (*See* dkt. 347 at 1 n.1; dkt. 67 at 17–21). Accordingly, in August 2012, he was sentenced to life imprisonment to be followed by 10 years of supervised release. (Dkt. 73). In 2018, Defendant's sentence was subsequently reduced to 288 months' (24 years') imprisonment. (Dkt. 265). Defendant later sought further reduction of his sentence under 18 U.S.C. § 3582(c)(2), but the Court denied the

motion. (Dkt. 273). Defendant has now been in custody for approximately 9 years (*see* dkt. 347 at 1) and is currently projected to be released on October 13, 2032, *see Inmate Locator*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 24, 2021).

The instant motion arises from the ongoing COVID-19 pandemic. Defendant is incarcerated at Federal Correctional Institution (FCI) Oxford, where there is currently 1 active COVID-19 case among the inmate population, 0 active cases among staff, and 0 reported inmate deaths; 696 inmates and 75 staff members were previously infected and have recovered. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 24, 2021).[1] In other words, more than 75% of FCI Oxford inmates have been infected.[2] COVID-19 vaccines have not yet been administered at FCI Oxford. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 24, 2021).[3]

---

[1] The BOP website contains the following disclosure:
> These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 24, 2021) (emphasis in original). The website further indicates there have been 901 COVID-19 tests conducted at FCI Oxford, 0 are pending, and there has been a total of 714 positive tests. *Id.*

[2] FCI Oxford has 923 total inmates, 833 of whom are housed at the Federal Correctional Institution and 90 of whom are housed at the adjacent minimum security satellite camp. *FCI Oxford*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/oxf/ (last visited Feb. 24, 2021).

[3] The BOP website contains the following information about vaccine data:

2

Defendant, 38, previously contracted and recovered from COVID-19 while in prison. (*See* dkt. 347 at 4; dkt. 355 at 15). Defendant argues the unadorned threat of reinfection from COVID-19 constitutes an extraordinary and compelling reason warranting compassionate release; he also argues he could receive a lower sentence if he were sentenced today. (Dkt. 347 at 4–8). If released, Defendant proposes residing with his parents, a placement Probation finds suitable, with the caveat that the Court would need to approve an association request for Defendant to have contact with his father, who has a felony conviction. (Dkt. 346 at 2).

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of

---

The information in this area of the resource page is updated each weekday at 3:00pm EDT. It's compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. The locations in the table below have received allocations of the vaccine. The numbers in the table only reflect staff and inmates that have completed both doses (fully inoculated). Staff who received their vaccination in the community rather than a BOP facility, are not reflected in the numbers below.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 24, 2021).

3

the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). To properly exhaust, the defendant must have "present[ed] the same or similar ground for compassionate release in a request to the Bureau as in [the] motion to the court." *United States v. Williams*, ___ F. 3d ___, No. 20-2404, 2021 WL 486885, at *2 (7th Cir. Feb. 10, 2021). This administrative exhaustion requirement, though not a jurisdictional prerequisite, is a mandatory claims-processing rule that must be enforced when properly invoked. *United States v. Sanford*, ___ F. 3d ___, No. 20-2445, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021).

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons" for release consistent with any applicable policy statement issued by the United States Sentencing Commission, § 3582(c)(1)(A)(i). The only relevant policy statement, U.S.S.G. § 1B1.13, is outdated and not currently binding on district judges, but it provides a "working definition of 'extraordinary and compelling reasons' " that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180. Subsections (A)–(C) of the Application Note to § 1B1.13 enumerate three specific circumstances that qualify as "extraordinary and compelling reasons": (A) diagnosis of a terminal illness or serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (B) aging-related health decline

where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) "death or incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, Application Note 1(D).

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

The Government concedes that Defendant has satisfied the administrative exhaustion requirement. (*See* dkt. 355 at 6, 14). Defendant submitted a compassionate release request to the warden on December 7, 2020, citing a sentencing disparity (dkt. 347-5 at 1), then waited more than 30 days before filing a request for compassionate release in this Court on January 27, 2021 (dkt. 344). It appears Defendant did not present the threat of COVID-19 in his request to the warden, and thus did not properly exhaust that grounds for compassionate release. *See Williams*, 2021 WL 486885, at *2. Nevertheless, the administrative exhaustion requirement is not a jurisdictional prerequisite, and the Government has not invoked an exhaustion issue. *See Sanford*, 2021 WL 236622, at *3. The Court can therefore proceed to the merits.

First, Defendant argues the threat of contracting COVID-19 in prison is an extraordinary and compelling reason for release. (Dkt. 347 at 5). Defendant previously contracted COVID-19; he tested positive on September 25, 2020, and his infection was "resolved" on October 8, 2020. (Dkt. 349 at 20, Dkt. 349-1 at 6). Although he states in his *pro se* filing "he was extremely ill for several weeks," (dkt. 344 at 1), his medical records indicate he reported no symptoms except loss of taste and smell during the infection period and reported no symptoms related to his COVID-19 diagnosis thereafter. (*See* Dkt. 349 at 8–10). Defendant argues "although, luckily, he did not experience severe symptoms," "[t]here is no guarantee . . . he cannot contract COVID-19 again and suffer more serious consequences." (Dkt. 347 at 4–5). While the Court is sympathetic to Defendant's fears, the general risk of contracting COVID-19 in prison is not an "extraordinary and compelling reason" for relief. It is also worth noting that there is currently only one active case of COVID-19 at FCI Oxford, *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 24, 2021), and BOP is taking significant measures to protect the health of inmates. BOP's Modified COVID-19 Operations Plan provides for screening and testing of inmates, screening and temperature checking of staff and visitors, reducing congregate gatherings, and mandating quarantine periods for new inmates. *BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Feb. 25, 2021). BOP has also placed 22,093 inmates on home confinement and fully vaccinated 56,705 staff and inmates. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/

(last visited Feb. 25, 2021). Vaccination is expected to begin at FCI Oxford very soon. (Dkt. 355 at 13).

Second, Defendant argues the disparity between the "harsh sentence he originally received" and the one he could receive if sentenced today constitutes an extraordinary and compelling reason for relief. (Dkt. 347 at 5–8). Defendant argues he was "hopelessly addicted" to methamphetamine when he committed the instant offense, and he and the six others involved were producing just enough methamphetamine "to satisfy their habits and perhaps to earn enough to get the materials together to produce more." (Dkt. 347 at 7). He argues he "did not deserve a life sentence, or even a reduced sentence that started from a life sentence, based on this sort of conduct and history." (Dkt. 347 at 7).

Under current law—following the passage of Section 401(a) of the First Step Act—Defendant would likely face an enhanced mandatory minimum sentence of 15 years,[4] rather than life. Defendant argues the Court "had no discretion when it imposed a life sentence on [Defendant] but it might very well have considered a much lower sentence" than 288 months (24 years) "if the minimum sentence had been 15 years" at the time of sentencing. (Dkt. 347 at 7). Defendant fails to acknowledge,

---

[4] Defendant's prior conviction for aggravated battery would likely constitute a "serious violent felony" under 21 U.S.C. §§ 841 and 851, subjecting him to an enhanced mandatory minimum of 15 years' imprisonment under current law. (*See* dkt. 347 at 7; dkt. 355 at 15). However, Defendant notes "[n]o details of the offense were provided in the PSR and there was no indication he failed to complete his parole time successfully for that conviction." (Dkt. 347 at 7). If his aggravated battery conviction did not constitute a "serious violent felony," his statutory mandatory minimum would be 10 years. 21 U.S.C. § 841.

7

however, that his reduced sentence of 288 months is still well below the Guideline range of 360 months to life he would likely face if sentenced today.[5] While Defendant's sentence is above the mandatory minimum he would face today, speculation he would have received a lower sentence than 288 months' imprisonment—which is already well below today's Guideline range—is not a concrete disparity and certainly not one so "extreme" as "can be truly described as an extraordinary and compelling reason for relief." *United States v. Haynes*, No. 96-cr-40034, Dkt. 170 at 14 (C.D. Ill. Feb. 4, 2021).

Though the Court is moved by the letters from Defendant and his family, on holistic review of Defendant's reasons for compassionate release, the Court finds, in its discretion, they do not rise to the level of extraordinary and compelling.

### Conclusion

IT IS THEREFORE ORDERED that Defendant's requests for compassionate release (dkts. 344, 347) are DENIED.

SO ORDERED.

Entered this 25th day of February 2021.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge

---

[5] Defendant was responsible for manufacturing 4 kilograms of methamphetamine, (dkt. 67 at 12), which today corresponds to an offense level of 32. U.S.S.G. §2D1.1(c). Accounting for the adjustments he received (dkt. 67 at 15–16), a total offense level of 38 and criminal history category of V (dkt. 67 at 21) corresponds to a current Guideline range of 360 months to life. U.S.S.G. § 5A.